**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **FAUSTINO XAVIER BETANCOURT COLÓN**  **Parte Demandante**  v.  **BUNS BURGER SHOP, L.L.C.**  **Parte Demandada** | **SOBRE:**  **PETICIÓN DE ORDEN** |

## DEMANDA

**AL HONORABLE TRIBUNAL:**

Comparece la parte demandante, Faustino Xavier Betancourt Colón y respetuosamente solicita un **interdicto permanente**[1] en contra de Buns Burger Shop, L.L.C. de conformidad con las disposiciones del Título III de la *Americans with Disabilities Act*.

### I. PARTES

**1.** El nombre de la parte demandante es: Faustino Xavier Betancourt Colon. Su dirección postal es: 11 Calle Teresa Jornet, Apt 34, San Juan, PR 00926-7561. Su dirección física es: 11 Calle Teresa Jornet, Apt 34, San Juan, PR 00926-7561. Su número de teléfono es: (787) 348-7280.

**2.** El nombre de la parte demandada es: Buns Burger Shop, L.L.C. La parte demandada es titular, arrendador, arrendatario y/u operador del lugar de acomodo público que se identifica en el párrafo 5.

### II. ALEGACIONES

**A. Sobre Las Condiciones Médicas de la Parte Demandante**

**3.** El señor Faustino Betancourt tiene las siguientes condiciones: (1) hipertensión, (2) diabetes mellitus tipo II; (3) neuropatía diabética; (4) osteoartritis; (5) artritis inflamatoria; (6) hidrocefalia; (7) insuficiencia

---

[1] No se solicita interdicto preliminar en este momento.

1

cardiaca congestiva; (8) deformidad en ambos pies; (9) obstrucción pulmonar crónica; (10) apnea del sueño; (11) enfermedad articular degenerativa de la columna lumbar; (12) túnel carpiano. Debido a la insuficiencia cardiaca se le implantó un desfibrilador automático en febrero de 2012, para prevenir una muerte súbita.

4. El señor Faustino Betancourt, como resultado de estas condiciones, tiene una limitación de movilidad sustancial en comparación con la persona promedio de la población general, por lo cual hace uso de un *scooter*, el cual es su medio predilecto para movilizarse, también es dueño y usa en ocasiones una silla de ruedas. A modo de ejemplo, la insuficiencia cardiaca le causa hinchazón en los pies, lo que resulta en una movilidad limitada debido a que caminar con los pies hinchados le provoca dolor. La insuficiencia cardiaca resulta en una capacidad para moverse sustancialmente limitada, pues el caminar hace que se agite su respiración o causa hiperventilación. La deformidad en los pies causa limitaciones sustanciales en la movilidad y mantener balance.

B. **Sobre La Propiedad en Controversia y Competencia del Tribunal**

5. La propiedad en controversia es un lugar de acomodo público, conocido como Buns Burger Shop, localizado en: Calle Caribe Esquina Ashford, Condado, San Juan, Puerto Rico, 00907 y sus coordenadas son: 18.455412658807195, -66.0705582677871. (En adelante, nos referiremos a este lugar como "la Propiedad" o por su nombre comercial).

6. La parte demandada es titular del lugar de acomodo público que se identifica en el párrafo 5.

7. La parte demandada es arrendadora del lugar de acomodo público que se identifica en el párrafo 5.

8. La parte demandada es arrendataria del lugar de acomodo público que se identifica en el párrafo 5.

9. La parte demandada es operadora del lugar de acomodo público que se identifica en el párrafo 5.

2

**C. La Discriminación en la Propiedad al Demandante por Razón de su Discapacidad.**

10. La parte demandante visitó Buns Burger Shop a inicios de agosto del 2023.

11. Faustino Betancourt muestra un interés especial en visitar Buns Burger Shop de Condado. Hay varias razones detrás de su entusiasmo por visitar este lugar en particular. En primer lugar, ha oído hablar de la excelente calidad de las hamburguesas que se sirven en Buns Burger Shop. En el mundo gastronómico, una buena referencia puede hacer que un lugar se convierta en una parada obligada para los amantes de la comida, y en este caso, las hamburguesas de Buns Burger Shop han capturado la atención del demandante.

12. Pero más allá de la comida, el sector de Condado en San Juan tiene un atractivo adicional para él. Condado es una zona turística y reconocida de San Juan. Es conocido por sus hermosos paisajes, playas, y una vibrante vida nocturna que atrae a locales y turistas por igual. Faustino tiene una predilección por visitar zonas con ese tipo de ambiente y energía, y Condado se encuentra en la lista de sus lugares favoritos. Por tanto, al visitar el zona desea poder acceder a los bienes y servicios ofrecidos en la Propiedad.

13. Además de las razones previamente mencionadas, Faustino Betancourt tiene otro propósito en su visita a Buns Burger Shop en Condado. En su calidad de tester de derechos civiles, tiene un interés particular en evaluar y asegurar que las propiedades y establecimientos sean accesibles para todos, independientemente de sus capacidades físicas o necesidades especiales.

14. Como resultado de su visita, la parte demandante tiene conocimiento de existencia de las siguientes barreras arquitectónicas en la Propiedad:

   **Exterior de la Propiedad**:

   a. **Rutas de Acceso**: No existe una ruta accesible que permita un acceso seguro hacia el interior del local. Esta ausencia de rutas adecuadas se

3

evidencia por la presencia de escaleras y elevados verticales que obstaculizan la movilidad, especialmente para personas que utilizan sillas de ruedas u otros dispositivos de movilidad.

b. **Entradas a la Propiedad**: Se identificaron tres entradas:

   i. Una entrada presenta escaleras, lo que la hace inaccesible para individuos en sillas de ruedas o scooter, o en general para alguien con problemas de movilidad.

   ii. Una segunda entrada cuenta con un "vertical rise", similar a un escalón, lo que también representa una barrera para el acceso.

   iii. Una tercera entrada, que en teoría podría ser la más accesible y apta para el ingreso, se encuentra obstruida. A pesar de ser plana y sin escaleras, está bloqueada por una mesa y otros objetos, impidiendo su uso como entrada accesible.

c. **Señalización**: Ninguna de las entradas cuenta con letreros adecuados que indiquen la ubicación de una posible entrada accesible. Esto, junto con la falta de un símbolo internacional de acceso para personas con discapacidad, deja al señor Betancourt Colón sin la capacidad de identificar rápidamente una entrada adecuada, forzándolo a movilizarse por áreas que no garantizan la seguridad de alguien en una silla de ruedas. Esto va en contravención de las disposiciones ADAAG 2010 § 216.6.

**Interior de la Propiedad**:

d. El mostrador o counter del interior de la Propiedad tiene una altura de unas 36 11/43 pulgadas en todas sus partes, medido desde el suelo hasta la superficie. Siendo demasiado alto y limitando el acceso para el señor Betancourt Colón para la comunicación con el personal del restaurante. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1

4

(requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal).

e. El posicionamiento de los dispensadores de salsa de tomate, mayonesa, mostaza excede la altura recomendada, situándose a 45 pulgadas. Además, los sorbetes se encuentran a una altura superior de 36 pulgadas, se ubican demasiado altos. Este exceso en la altura dificulta que personas con discapacidades de movilidad, como Don Faustino, accedan y utilicen estos dispensadores y elementos de manera autónoma.

f. Además, la presencia de rampas en el área de pago y ordenar, así como para acceder al baño, con una inclinación superior a la recomendada de 1:12, representa un desafío adicional. Una inclinación excesiva puede hacer que las rampas sean peligrosas y difíciles de navegar para personas que usan sillas de ruedas, scooters o que tienen limitaciones de movilidad. Estas condiciones, al no cumplir con las normativas de accesibilidad, comprometen la seguridad y autonomía de usuarios como Don Faustino al tratar de moverse y hacer uso de las instalaciones.

**Baños de la Propiedad**:

g. Se provee un **baño para una persona a la vez, y la puerta abre hacia adentro del cuarto**, pero el área adyacente al inodoro de no tiene el espacio de 30" x 48" adyacente a la puerta. Esto impide que al ingresar al baño el señor Betancourt Colón con su *scooter*, pueda girar para cerrar la puerta. ADAAG 2010 § 603.2.3.

h. Además, en cuanto a la **cerradura de la puerta del baño**, esta no tiene una configuración que permita su operación sin tener que apretar fuerte, torcer o girar la muñeca. Lo cual impone al señor Betancourt Colón la necesidad de girar su muñeca fuertemente para ingresar o

5

salir por la puerta y luego para cerrarlo, quien por su condición de túnel carpiano enfrenta dificultades para hacerlo.

i. En cuanto al lavamanos, el **espacio alrededor del lavamanos** es sustancialmente inconsistente con la reglamentación aplicable. Impidiendo al señor Betancourt Colón un acceso cómodo al lavamanos, desde su silla de ruedas. ADAAG 2010 § 606.2.

j. En cuanto al lavamanos, el **espacio debajo del lavamanos** es sustancialmente inconsistente con la reglamentación aplicable, ya que tiene una base que obstruye la parte inferior del lavamanos. Esto impide que el señor Betancourt Colón acceda de manera frontal al lavamanos en su *scooter*. ADAAG 2010 § 306.2.

k. En cuanto al lavamanos, **el grifo** no tiene una configuración que permite su operación sin tener que apretar fuerte, torcer o girar la muñeca. Lo cual impone al señor Betancourt Colón la necesidad de girar su muñeca fuertemente para accionarlo y luego para cerrarlo, quien por su condición de túnel carpiano enfrenta dificultades para hacerlo. ADAAG 2010 § 606.4.

l. El **espacio bajo el lavamanos** para las piernas y rodillas es de 19 pulgadas. Según ADAAG 2010 §306., el espacio libre para las rodillas debajo de un elemento debe ser de 27 pulgadas. Este hecho limita el espacio disponible para Don Faustino al acceder al lavamanos desde su *scooter*, dificultando su uso y comprometiendo su comodidad y seguridad.

m. En cuanto al área del inodoro, el **espacio provisto alrededor del inodoro** es sustancialmente inconsistente con la reglamentación aplicable. Desde la pared hasta el lavamanos de la Propiedad hay una distancia tan solo de 48 pulgadas, lo que interfiere con el espacio libre requerido alrededor del inodoro de 60 pulgadas según ADAAG 2010 § 604.3.1. Lo anterior impide que el señor Betancourt Colón se traslade de forma segura desde su *scooter* hasta el inodoro para hacer uso del

6

    mismo. ADAAG 1991 § 4.22; ADAAG 2010 § 604.3.1, 604.8.1.1.

n. Por otra parte, la **medida del centro del inodoro hasta la pared** es de 23 3/4 pulgadas, superando la distancia estipulada por ADAAG 604.2, que establece que la línea central del inodoro debería estar entre 16 y 18 pulgadas de la pared lateral. Esta ubicación incorrecta complica y pone en riesgo el acceso y traslado del señor Faustino desde su dispositivo de movilidad, afectando su seguridad y autonomía en el baño.

o. En cuanto a los **pasamanos** alrededor del inodoro, tanto al lado ("side grab bar") como detrás ("rear grab bar") del inodoro, la configuración existente en la pared al lado y detrás del inodoro es inconsistente. Solo cuenta con el "rear grab bar", pero está obstruido por objetos instalados en la pared. Frente al "side grab bar", la misma es inexistente, no hay. La suma de las condiciones anteriores impone al señor Betancourt Colón la necesidad de realizar movimientos inseguros para movilizarse desde su *scooter*, hasta el inodoro y regresar al mismo. ADAAG 2010 §§ 604.5.1, 609.4., 609.3, 604.5.2, 609.4, 609.6.

p. El **espejo** está ubicado a una altura mayor a 49 pulgadas, impidiendo que el señor Betancourt Colón haga uso del mismo desde su *scooter* porque la altura de la parte reflejante del espejo impide que él se pueda reflejar y por tanto, que pueda hacer uso de él. ADAAG 2010 § 603.3.

q. El **dispensador de papel de mano**: Según las regulaciones, los dispensadores de toallas de papel deben estar ubicados a una altura máxima de 48 pulgadas ADAAG 2010 §606.1 & 308. Sin embargo, en el baño, la parte operativa del dispensador de toallas de papel para secarse las manos instalado en la pared al lado de la puerta de ingreso, está ubicada a una altura de 65 pulgadas, lo que hace imposible que el señor Faustino lo alcance desde su *scooter*, y además, la situación de inaccesibilidad de incrementa más ya que está obstruido por un zafacón de gran tamaño justo debajo de él.

7

r. El **interruptor eléctrico** está a 54 pulgadas, excediendo las 48 pulgadas máximas establecidas por ADAAG 2010 §308.2.1 para alcance frontal. Este incumplimiento dificulta que Don Faustino, con su limitación de movilidad, pueda acceder y utilizar el interruptor de manera segura y cómoda.

15. Las barreras en el **exterior de la propiedad** se relacionan con las condiciones y limitaciones sustanciales del señor Betancourt. Cuando utiliza su scooter, necesita un camino claro y accesible para ingresar sin obstáculos. Al caminar, es esencial que no se agote buscando una entrada adecuada, ya que cualquier esfuerzo adicional puede afectar su bienestar. Además, para mantener su estabilidad y seguridad, es crucial que las superficies por las que se desplace no sean demasiado inclinadas o irregulares. La adecuada adaptación de las instalaciones sería esencial para su acceso seguro y cómodo al establecimiento..

16. Las barreras en el **interior de la propiedad** se relacionan con las condiciones y limitaciones sustanciales al señor Betancourt Colón debido a lo siguiente: El *counter* inaccesible con una altura superior a 36 pulgadas impide al señor Betancourt Colón acceder desde su silla de ruedas o *scooter*, excluyéndolo de manera efectiva del servicio. La limitación de altura dificulta la interacción visual y la comunicación directa con el empleado del restaurante, causando barreras en la realización de su pedido y afectando su experiencia. Esta falta de accesibilidad no solo restringe su participación en la transacción, sino que también socava su dignidad y autonomía al requerir asistencia adicional. Cumplir con las pautas de accesibilidad permitiría una experiencia inclusiva, donde podría interactuar y comunicarse de manera efectiva, mejorando su interacción con el personal y su disfrute general en el restaurante.

17. Las barreras en el **baño de la propiedad** están relacionadas con las condiciones del señor Faustino Betancourt debido a que, en primer lugar, el espacio angosto en el cubículo del baño le impide maniobrar

8

adecuadamente y le causa dificultades al pasar de su *scooter* al inodoro. Además, la altura inapropiada del lavamanos le impide utilizarlo correctamente, ya que no puede alcanzar el grifo. Asimismo, la altura del dispensador de toallas de papel obliga al señor Faustino a estirarse, lo que supone un riesgo de caída o desestabilización desde su *scooter* al intentar alcanzar las toallas de papel. La obstrucción también impide que pueda acercarse lo suficiente al dispensador, lo que añade complicaciones. La altura del espejo es discriminatoria para el señor Faustino, ya que debido a su ubicación no puede verse correctamente, lo que refuerza su sensación de no ser bienvenido en la Propiedad. La cerradura de la puerta del baño representa un problema adicional para él, ya que le supone esfuerzos adicionales e innecesarios al intentar manipularla con sus problemas en las manos al entrar o salir del baño. Por último, la disposición y falta de pasamanos adecuados alrededor del inodoro plantean riesgos significativos para su seguridad al moverse. Estas barreras no solo impiden su acceso físico sino que también transmiten un mensaje claro de exclusión.

18. Las barreras en el exterior de la Propiedad se podrían solucionar de la siguiente manera:
    a. Crear rutas de acceso libre de barreras que permitan un acceso seguro al interior del establecimiento, eliminando las escaleras y adaptando las zonas con "vertical rise" para que sean completamente accesibles.
    b. Garantizar que la entrada que actualmente parece ser la más accesible esté libre de obstrucciones, permitiendo el acceso ininterrumpido a personas con movilidad reducida.
    c. Implementar señalización adecuada en todas las entradas, con el símbolo internacional de acceso para personas con discapacidad, de acuerdo con las directrices ADAAG 2010 § 216.6.

19. Las barreras en el interior de la Propiedad se podrían solucionar de la siguiente manera: reconfigurando el mostrador para que cumpla con la

9

altura y largos requeridos.

20. Las barreras en el baño de la Propiedad se podrían solucionar de la siguiente manera: ampliar el espacio alrededor del lavamanos; reubicar objetos que se pueden mover; modificar la puerta para que abra hacia afuera (si ello puede hacerse sin violar otras reglamentaciones); ampliar el espacio interior del baño; reposicionar los objetos del baño; reconfigurar el baño para proveer el máximo espacio posible; hacer espacio debajo del lavamanos; reposicionar el lavamanos; cambiar el lavamanos a uno accesible; sustituir el grifo; reconfigurar la posición del espejo; colocar y posicionar pasamanos de manera consistente con la reglamentación citada; entre otros.

21. La parte demandante se verá afectada en un futuro por las barreras que existen en la propiedad debido a que:

    a. Buns Burger Shop en Condado ha capturado el interés de Faustino Betancourt no solo por ser un establecimiento en un área que frecuenta, sino por su renombrada calidad culinaria. Las hamburguesas del lugar son altamente elogiadas en círculos gastronómicos y han logrado convertir al local en un destino deseado para aficionados y críticos de comida. Este reconocimiento ha generado en Faustino una curiosidad y un anhelo genuino de experimentar por sí mismo las delicias que todos comentan.

    b. El distrito de Condado no es simplemente un lugar más en San Juan para Faustino; es un epicentro de cultura, vida y energía. Con sus paisajes cautivadores, playas prístinas y una vibrante vida nocturna, Condado se ha establecido como un must-visit para tanto locales como turistas. Faustino, con su aprecio por zonas llenas de vida y actividad, encuentra en Condado el ambiente perfecto para relajarse, socializar y sumergirse en las ofertas culturales y recreativas que este distrito tiene para ofrecer. Por eso tiene interés de visitar ese restaurante específico que funciona en la Propiedad, en esa precisa ubicación.

    c. Cada visita de Faustino a Condado viene con la intención de aprovechar al máximo lo que el área tiene para ofrecer. Para él, no se trata solo de disfrutar del paisaje o de la comida, sino también de tener acceso completo a los bienes y servicios que hacen de Condado un destino completo. Ya sea visitando tiendas, restaurantes o simplemente paseando, para Faustino es esencial que pueda experimentar Condado en su totalidad, sin limitaciones, y esto incluye disfrutar los bienes y servicios ofrecidos en la Propiedad de manera igualitaria como lo haría cualquier otra persona.

22. La parte demandante tiene interés en regresar a la Propiedad como *tester* de derechos civiles, es decir, como una persona que se encarga de evaluar si sus derechos civiles están siendo respetados y protegidos. En el contexto de la ADA, un *tester* de derechos civiles es alguien que investiga y evalúa si las personas con discapacidades están recibiendo el mismo acceso y trato justo que las personas sin discapacidades. El papel del *tester* de derechos civiles es crucial en el contexto de la ADA, ya que esta ley fue diseñada para proteger los derechos de las personas con discapacidades y garantizar que tengan acceso a los mismos servicios y oportunidades que las personas sin discapacidades. Sin embargo, a pesar de que la ADA se promulgó en 1990, las personas con discapacidades aún enfrentan barreras y discriminación en su vida diaria. Históricamente, los *testers* de derechos civiles han jugado un papel importante en la lucha por la igualdad de derechos y la eliminación de la discriminación en los Estados Unidos. En la década de 1960, los *testers* de derechos civiles fueron utilizados por los líderes del movimiento por los derechos civiles para evaluar si los negocios y las instituciones estaban cumpliendo con las leyes de derechos civiles. Estos *testers* ayudaron a exponer la discriminación y a presionar a las empresas e instituciones para que cumplieran con la ley. Su trabajo es importante porque ayuda a garantizar que las personas con discapacidades tengan acceso a los mismos servicios y oportunidades que

las personas sin discapacidades, y ayuda a exponer y eliminar la discriminación. Langer v. Kiser, No. 21-55183 (9th Cir. Jan. 23, 2023) ("Being an ADA tester is, in fact, a legitimate reason to go to a business and the district court's insinuation otherwise is legally flawed").

23. La parte demandante ha sufrido un daño dignatario, que es un tipo de daño en casos de discriminación, según expresado en el caso vinculante[2] Laufer v. Acheson Hotels, LLC, 50 F.4th 259 (1st Cir. 2022) ("Dignitary harm or stigmatic injuries caused by discrimination have long been held a concrete injury in fact") Estos daños buscan compensar la pérdida de dignidad y autoestima que una persona puede experimentar como resultado de la discriminación. En otras palabras, los daños dignatarios reconocen que la discriminación no solo puede causar daños físicos o económicos, sino que también puede afectar profundamente la autoimagen y la autoestima de la persona discriminada. Esto puede incluir sentimientos de vergüenza, humillación y menosprecio. La ADA permite que las personas que han sido discriminadas por motivos de discapacidad busquen una compensación por daños dignatarios. La parte demandante informa que reclama daños dignatarios de las siguientes dos maneras independientes: (1) mediante el reconocimiento judicial de que hubo un daño dignatario a la parte demandante; (2) mediante la imposición de la cantidad de un dólar como daño dignatario. No se solicitan daños compensatorios.

24. Por no conocerse el historial de construcción y alteración de la propiedad en este momento, se alega: la propiedad fue construida y/o alterada luego del 15 de marzo de 2012; en la alternativa, la Propiedad fue construida o alterada luego del 26 de enero de 1993; en la alternativa, la propiedad fue construida previo al 26 de enero de 1993, pero la parte demandada cuenta con los recursos económicos para que la propiedad cumpla con los códigos de construcción más vigentes.

---

[2] Vinculante en cuanto a derecho federal únicamente.

### III.   REMEDIOS LEGALES SOLICITADOS

**POR TODO LO CUAL**, la parte demandante muy respetuosamente solicita los siguientes remedios legales:

A. Un interdicto permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la parte demandada eliminar las barreras arquitectónicas que existen en la Propiedad mediante el cumplimiento con las guías de diseño accesible que le sean aplicables según su fecha de construcción y alteración. Si se trata de una propiedad que existía al 26 de enero de 1993, que la propiedad se altere para que esté en cumplimiento con las más recientes guías de diseño accesible promulgadas en virtud de la ADA en la medida máxima que sea económicamente viable para el demandado, ya sea inmediatamente o mediante un plan de transición a largo plazo hacia el total cumplimiento.  Si la creación de un plan de transición al cumplimiento no es económicamente viable, o si los cambios que son necesarios no son estructuralmente posibles, se solicita que se ordene que el acceso a los bienes y servicios se haga disponible mediante métodos alternos conforme a 42 U.S.C. § 12182(b)(2)(A)(v).

B. Un interdicto permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la parte demandada a que elimine las políticas y prácticas discriminatorias existentes en la actualidad que impiden la eliminación de las barreras arquitectónicas y/o políticas y prácticas que impiden que se brinden los acomodos razonables que sean necesarios para que haya un trato igualitario.

C. En caso de que la parte demandada continúe su condición discriminatoria, se solicita de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504, que se ordene el cierre y clausura de la Propiedad como medida cautelar para detener la condición discriminatoria hasta tanto se haya acreditado de manera fehaciente y a satisfacción del tribunal que se ha eliminado el discrimen.

13

D. Daños dignatarios por la cantidad de un dólar o mediante un pronunciamiento judicial que declare que la dignidad de la parte demandante fue agraviada.

E. Honorarios de abogado, costas y gastos de litigio, de la parte demandante prevalecer en sus reclamos.

F. La provisión de cualquier otro remedio que sea justo y propio, en ley o equidad, y que no haya sido expresamente solicitado, pero que proceda como cuestión de derecho y conforme a la Regla 42.4 de las Reglas de Procedimiento Civil de Puerto Rico.

**SOMETIDO RESPETUOSAMENTE**.

Fechado: Agosto 22, 2023.

**VELEZ LAW GROUP LLC**
División de Derechos Civiles

f/José Carlos Vélez Colón
Lic. José C. Vélez Colón
RUA 18913

1969 S. Alafaya Trail #379
Orlando, FL 32828-8732

Email.:    vlg@velezlawgroup.com
Teléfono:  (787)-422-1881
           (787)-422-1958

**ABOGADO DE LA PARTE DEMANDANTE**

14